# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| TRAFALGAR CAPITAL SPECIALIZED INVESTMENT FUND (IN LIQUIDATION), a Luxembourg entity, | Case No. 11-CV-24084 |
| Plaintiff, | |
| vs. | |
| SCOTT W. HARTMAN; DAVID S. MONTOYA; and SEAVIEW MEZZANINE FUND ADVISORS, INC. | |
| Defendants. | |

## AMENDED COMPLAINT

Trafalgar Capital Specialized Investment Fund (the "Plaintiff" or the "Fund") hereby sues Scott W. Hartman, David S. Montoya, and Seaview Mezzanine Fund Advisors, Inc. (the "Defendants" or the "Guarantors") and alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1.     The Fund is an investment company incorporated under the laws of the Grand Duchy of Luxembourg.[1]

2.     On information and belief, Scott W. Hartman ("Hartman") is an individual residing in the state of Pennsylvania.

3.     On information and belief, David S. Montoya ("Montoya") is an individual residing in the state of Connecticut.

---

[1] On April 22, 2010, the shareholders of the Fund elected to dissolve and voluntarily liquidate the Fund. The shareholders also elected Trafalgar Capital S.à.r.l. (the General Partner to the Fund) to serve as liquidator of the Fund.

4. On information and belief, Seaview Mezzanine Fund Advisors, Inc. ("Seaview"), is a corporation organized under the laws of the state of Delaware.

5. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000 exclusive of interests and costs.

6. Venue is proper in this Court because this is an action against the Guarantors for a breach of the Guaranty (as defined below) which contains a forum selection clause providing that any litigation based on or arising out of, under, or connection with this Guaranty be brought and maintained exclusively in the federal courts of the state of Florida.[2]

## GENERAL ALLEGATIONS

7. During 2008 and most of 2009, Hartman and Montoya were owners and officers of Lumax Gaming, Inc. ("Lumax"), a corporation organized under the laws of the state of Nevada.

8. On or about February 28, 2008, Lumax entered into an asset purchase agreement with Silver Saddle, Inc. ("SSI") a corporation organized under the laws of the state of Nevada, to purchase certain assets of SSI including a gaming establishment known as the Silver Saddle Saloon located at 2501 E. Charleston Blvd., Las Vegas, Nevada 89104 (the "Property").

9. On or about April 30, 2008, Lumax and the Fund entered into, among other things, a securities purchase agreement (the "Securities Purchase Agreement") whereby the Fund agreed to purchase $6.5 million of senior secured redeemable debentures for an aggregate

---

[2] The forum selection clause also provides that the Guarantors expressly and irrevocably submit to the jurisdiction of the federal courts of the State of Florida for the purpose of any such litigation. The Guaranty also states that it shall be governed and construed in all respects in accordance with the laws of the State of Florida, as such laws are applied by Florida courts.

purchase price of $6.5 million.  The proceeds obtained from the Securities Purchase Agreement were then used to fund Lumax's purchase of the Property from SSI.

10. Contemporaneously with the execution of the Securities Purchase Agreement, Lumax also executed a senior secured redeemable debenture dated as of April 30, 2008 (the "Senior Secured Debenture"), a deed of trust dated as of April 30, 2008 (the "Deed of Trust"), an assignment of leases and rents dated as of April 30, 2008 (the "Assignment of Leases and Rents"), and a security agreement dated as of April 30, 2008 (the "Security Agreement" and together with the Securities Purchase Agreement, the Senior Secured Debenture, the Deed of Trust, and the Assignment of Leases of Rents, collectively, the "Loan Documents").

11. The Deed of Trust, the Assignment of Leases and Rents, and the Security Agreement were entered into by Lumax and the Fund to secure Lumax's obligations and the Fund's rights under the Securities Purchase Agreement and the Senior Secured Debenture.  Thus, the Deed of Trust, the Assignment of Leases and Rents, and the Security Agreement collectively encumbered all of Lumax's assets, including, without limitation the Property.

12. To further guarantee the full and timely payment of Lumax's obligations under the Securities Purchase Agreement and the Senior Secured Debenture, Hartman, Montoya, and Seaview (the Guarantors) each executed a personal and corporate guaranty dated as of April 30, 2008 (the "Guaranty").

13. Pursuant to the Guaranty, Hartman, Montoya and Seaview ***jointly and severally*** agreed to become surety to the Fund (i.e., the "Secured Party" and/or the "Obligee") to:

> pay all amounts due pursuant to the obligations of Lumax Gaming, Inc., a Nevada corporation (the "Obligor"), to the Secured Party under the Security Agreement dated the date hereof (the "Obligees") and its successors, endorsees, and assigns, to which the Obligee is a party, arising from those certain [Senior

3

> Secured] Debentures issued by the Obligor to the [Fund] pursuant to such Security Purchase Agreement or arising the Securities Purchase Agreement or from any of the Transaction Documents, as defined therein (collectively, the "Obligations"), and hereby jointly and severally guarantee the full and timely payment of all amounts due under the Obligations, and all extensions or renewals thereof, and all sums payable under or by virtue thereof including, without limitation, all amounts of principal and interest and all expenses (including attorneys' fees and costs of collection) incurred in the collection thereof . . .

A true and correct copy of the Guaranty is attached hereto as **Exhibit A**.

14. On or about June 30, 2009, the Fund and Lumax entered into a restructuring agreement (the "Restructuring Agreement"), which modified the payments due to the Fund under the Loan Documents. Additionally, Lumax acknowledged that as of June 30, 2009, the amount outstanding under the Loan Documents was $6,530,052.36.

15. After Lumax acquired the Property, Hartman and Montoya were unable to obtain the requisite Nevada gaming license to operate the casino because the Nevada Gaming Commission determined, in part, that it had concerns regarding their behavior. As a result of their inability to operate the casino establishment located on the Property, Hartman and Montoya conveyed and relinquished ownership and control of Lumax to another individual, Saeed Shakeri ("Shakeri"), on or about December 7, 2009.

16. On or about November 2010, Lumax defaulted on its obligations under the Loan Documents. On or about November 30, 2010, a Notice of Event of Default and Acceleration (the "Notice of Default") was sent to Lumax informing it that an Event of Default had occurred pursuant to Section 3.01 of the Senior Secured Debenture and that full payment of all outstanding debt in the sum of $10,751,593.29, was due as of November 30, 2010 with interest accruing at 12.25% per annum.

17. Additionally, on or about December 2, 2010, the Nevada Title Company, as the Trustee under the Deed of Trust, sent a Notice of Foreclosure to Lumax accompanied by a Notice of Breach and Election to Sell Under the Deed of Trust (collectively, the "Notice of Foreclosure"). The Notice of Foreclosure provides that Lumax has defaulted on payments required under the terms of the Senior Secured Debenture dated April 30, 2008 and that Lumax's debt to the Fund has been accelerated and become due immediately.

18. Unable to cure the default, Lumax executed and delivered that certain deed in lieu of foreclosure dated as of April 20, 2011 (the "Deed in Lieu"), effectively transferring ownership of the Property to Silver Saddle Acquisition Corp, who holds legal title to the Property on behalf of the Fund, the equitable and true owner of the Property. The Deed in Lieu was recorded in the Clark County Recorder's Office on May 17, 2011. The Deed in Lieu ***does not*** release Hartman, Montoya or Seaview (the Guarantors) from their obligations under the Guaranty. Moreover, the Fund never assigned its rights under the Guaranty; therefore, it has exclusive ownership and control of its rights under the Guaranty.

19. The Guaranty expressly provides that:

> Each Guarantor agrees that the liability of the Guarantors hereunder is present, absolute, unconditional, continuing, primary, direct and independent of the obligations of Obligor and of the other Guarantors. Obligee shall not be required to pursue or exhaust any other remedies before invoking the benefits of this Guaranty.
>
> . . . .
>
> Upon default by Obligor, the liability of the undersigned Guarantors shall be effective immediately and payable on demand without any suit or action against Obligor.

20.     As of August 2011, the underlying property where the casino is located has been valued at $800,000. As such, there remains a substantial deficiency owed to the Fund which continues to increase due to the accumulation of interest and attorneys' fees and costs.

## COUNT I - BREACH OF GUARANTY

### (Against All Defendants/Guarantors)

21.     Paragraphs 1-20 are incorporated by reference as if fully set forth herein.

22.     The Loan Documents executed by Lumax and the Fund are valid and enforceable contracts.

23.     The Guaranty executed by Hartman, Montoya, and Seaview is a valid and enforceable contract.

24.     On or around November 2010, Lumax defaulted with respect to its obligations under the Loan Documents and was issued a Notice of Event of Default and Acceleration.

25.     Lumax failed to timely cure its default.

26.     Pursuant to Section 3.01 of the Senior Secured Debenture, Lumax's failure to cure its default accelerated full payment of the outstanding balance under the Loan Documents in the amount of $10,751,593.29.

27.     The liability of the Guarantors to pay any and all amounts due under the Loan Documents became effective immediately upon Lumax's default.

28.     The Guaranty executed by Hartman, Montoya, and Seaview is a guaranty of payment and performance and not of collection, under which the Fund is not required first to enforce remedies against Lumax. Thus, the Guarantors' obligations to the Fund are independent of Lumax's obligations under the Loan Documents.

6

29.     Nonetheless, Lumax's transfer of the Property pursuant to the Deed in Lieu failed to satisfy the total outstanding debt owed to the Fund under the Loan Documents leaving a substantial deficiency in addition to interest, attorneys' fees, and costs.

30.     Pursuant to the Guaranty, Hartman, Montoya, and Seaview, jointly and severally owe the Fund the total of such deficiency in addition to interest, attorneys' fees, and costs.

31.     The Guaranty also provides for payment of reasonable attorneys' fees, costs, and expenses in the event the Fund is required to engage counsel to enforce its rights under the Guaranty.  The Fund has been required to retain the services of attorneys to prosecute this action.

WHEREFORE, Plaintiff demands judgment against Hartman, Montoya, and Seaview for (a) all amounts owed, including, without limitation, outstanding principal and accrued interest under the Loan Documents, attorneys' fees, costs, other expenses incurred, and post-judgment interest at the legal rate; and (b) such further relief as is just and proper.

Dated:  February 14, 2012

Respectfully submitted,

**ASTIGARRAGA DAVIS MULLINS GROSSMAN, P.A.**
701 Brickell Avenue, 16th Floor
Miami, Florida  33131
Phone:  (305) 372-8282
Facsimile:  (305) 372-8202
*Attorneys for the Plaintiff*

By:     */s/Ava J. Borrasso*
Edward H. Davis, Jr., Fla. Bar No. 704539
Ava J. Borrasso, Fla. Bar No. 006947

PERSONAL AND CORPORATE GUARANTY

For value received and intending to be legally bound, the undersigned, David S. Montoya, an individual residing at 5 Tall Tree Drive, Westport, CT 06880 ("Montoya"), Scott Hartman, an individual residing at 150 West 56th Street, Apt 4310, New York, NY 10019 ("Hartman"), Seaview Mezzanine Fund Advisors, Inc. (Seaview, and jointly and severally with Montoya and Hartman the "Guarantors"), (a) hereby jointly and severally become surety to the Obligee (defined below) to pay all amounts due pursuant to the obligations of Lumax Gaming, Inc., a Nevada corporation (the "Obligor"), to the Secured Party under the Security Agreement dated the date hereof (the "Obligees"), and its successors, endorsees and assigns, to which the Obligee is a party, arising from those certain Debentures issued by the Obligor to the Buyers pursuant to such Securities Purchase Agreement or arising the Securities Purchase Agreement or from any of the Transaction Documents, as defined therein (collectively, the "Obligations"), and hereby jointly and severally guarantee the full and timely payment of all amounts due under the Obligations, and all extensions or renewals thereof, and all sums payable under or by virtue thereof including, without limitation, all amounts of principal and interest and all expenses (including attorneys' fees and costs of collection) incurred in the collection thereof, the enforcement of rights thereunder or with respect to any security thereof and the enforcement hereof, and waive presentment, demand, notice of dishonor, protest, notice of protest and all other notices whatsoever; (b) waive and consent to any disposition of any collateral held by the Obligee or otherwise; and (c) consent and agree that each is bound (except as limited by Florida statutory law as amended from time to time) under the Obligation as fully as though such Guarantor(s) were a maker thereof; (d) consent to the exercise by Obligee of each and every remedy permitted by law, all without notice to or consent of and without affecting the liability of the undersigned; and (e) further consent and agree that each may be sued by Obligee with or without joining any other parties to or guarantors of the Obligation, whether primarily or secondarily liable, and without first or contemporaneously suing or enforcing any security interest against any such other persons, or otherwise seeking or proceeding to collect from him.

Each Guarantor warrants and represents to the Obligee that: (i) this Guaranty constitutes a legal, valid and binding obligation of such Guarantor, and is fully enforceable against such Guarantor in accordance with its terms, except to the extent enforceability may be limited by bankruptcy, insolvency or other similar laws affecting creditors' rights generally and subject to general equitable principles; and (ii) neither the execution nor delivery of this Guaranty by such Guarantor, nor fulfillment of nor compliance with the terms and provisions hereof, will conflict with, or result in a breach of the terms, conditions or provisions of, or constitute a default under any material agreement or instrument to which such Guarantor is now a party or by which such Guarantor may be bound, nor will result in the creation of any lien, charge or encumbrance upon any of such Guarantor's property or assets.

Each Guarantor agrees that the liability of the Guarantors hereunder is present, absolute, unconditional, continuing, primary, direct and independent of the obligations of Obligor and of the other Guarantors. Obligee shall not be required to pursue or exhaust any other remedies before invoking the benefits of this Guaranty. Nothing herein contained shall prevent Obligee, however, from suing the Obligor with or without making the Guarantor a party to the suit, or from exercising any other rights permitted by law, and if such suit or other remedy is availed of,

# EXHIBIT A

only the net proceeds therefrom, after deduction of all charges and expenses of every kind and nature whatsoever, shall be applied in reduction of the amount due on the Obligation, and Obligee shall not be required to institute or prosecute proceedings to recover any deficiency as a condition of payment hereunder or enforcement hereof. Upon default by Obligor, the liability of the undersigned Guarantors shall be effective immediately and payable on demand without any suit or action against Obligor.

Invalidity and Construction. If any provision of this Guaranty contravenes or is held invalid or unenforceable under any statue or rule of law of any applicable jurisdiction, then such provision(s) shall be deemed inoperative to the extent that it may conflict therewith and this Guaranty shall be construed as though it did not contain that provision such that this Guaranty shall be deemed modified to conform to such statute or rule of law, and the rights and liabilities of the parties to this Guaranty shall be construed and enforced accordingly. Any provision hereof that may prove invalid or unenforceable under any law shall not affect the validity or enforceability of any other provision hereof. This Guaranty shall be construed as to its fair meaning and not strictly for or against Guarantors or Obligee.

Notices, Demand. Any notice, demand or request hereunder shall be in writing and shall be deemed to have been validly given or made upon delivery, if personally delivered, or on the date mailed, if mailed postage prepaid, by first class mail, addressed to the party to be notified at the address set forth below, or to such other address as any party may hereafter designate for itself or himself by written notice to the other parties in the manner herein prescribed.

| | |
|---|---|
| If to the Guarantors: | David S. Montoya, Scott Hartman or Seaview Mezzanine Fund Advisors, Inc. <br> c/o SeaView Capital Advisors, LLC <br> 260 Madison Avenue <br> 8th Floor, Suite 8073 <br> New York, NY 10016 <br> Attn: David S. Montoya, Scott Hartman or Seaview Mezzanine Fund Advisors, Inc. <br> Telephone: (212) 774-3655 <br> Facsimile: (646) 278-0813 |
| If to the Obligee: | Trafalgar Capital Specialized Investment Fund <br> 8-10 Rue Mathias Hardt <br> BP 3023 <br> L-1030 Luxembourg <br> Attention: Andrew Garai, Chairman of the Board of Trafalgar Capital Sarl, General Partner <br> Facsimile: 011-44-207-405-0161 and <br> 001-786-323-1651 |

  With a copy to:  James G. Dodrill II, P.A.
          5800 Hamilton Way
          Boca Raton, FL  33496
          Attention: James Dodrill, Esq.
          Telephone: (561) 862-0529
          Facsimile: (561) 892-7787

  No delay or omission in exercising any right hereunder shall operate as a waiver of such right or any other right.  Guarantor agrees to pay reasonable attorneys' fees and all other costs and expenses that may be incurred by Obligee in the enforcement of this Guaranty.

LITIGATION.

  *Forum Selection and Consent to Jurisdiction.*  Any litigation based on or arising out of, under, or in connection with, this Guaranty shall be brought and maintained exclusively in the federal courts of the State of Florida.  Each Guarantor hereby expressly and irrevocably submits to the jurisdiction of the federal courts of the State of Florida for the purpose of any such litigation as set forth above and irrevocably agrees to be bound by any final judgment rendered thereby in connection with such litigation.  Each Guarantor irrevocably consents to the service of process by registered mail, postage prepaid, or by personal service within or without the State of Florida.  Each Guarantor hereby expressly and irrevocably waives, to the fullest extent permitted by law, any objection which Guarantor may have or hereafter may have to the laying of venue of any such litigation brought in any such court referred to above and any claim that any such litigation has been brought in any inconvenient forum.  To the extent that any Guarantor has or hereafter may acquire any immunity from jurisdiction of any court or from any legal process (whether through service or notice, attachment prior to judgment, attachment in aid of execution or otherwise) with respect to itself or its property, such Guarantor hereby irrevocably waives such immunity in respect of his obligations under this Guaranty and the other loan documents.

  *Waiver of Jury Trial.*  The Guarantor hereby knowingly, voluntarily and intentionally waives any rights he may have to a trial by jury in respect of any litigation based hereon, or arising out of, under, or in connection with, this Guaranty, or any course of conduct, course of dealing, statements (whether oral or written) or actions of Guarantor or Obligee.  The Guarantor acknowledges and agrees that he has received full and sufficient consideration for this provision and that this provision is a material inducement for the Obligee making the loan to Lumax Gaming, Inc.

  This Guaranty shall inure to the benefit of the Obligee, the Obligee's successors and assigns, and it shall be binding upon the Guarantor, his legal representatives, heirs and assigns.

MISCELLANEOUS.

  All pronouns and any variations thereof used herein shall be deemed to refer to the masculine, feminine, impersonal, singular or plural, as the identity of the person or persons may require.

This Guaranty shall be assignable solely by the Obligee, and upon notice of such assignment the Guarantor shall make any required payment to the assignee at the assignee's address.

Neither this Guaranty nor any provision hereof shall be waived, modified, changed, discharged, terminated, revoked or canceled, except by an instrument in writing signed by each Guarantor and Obligee.

This Guaranty shall be enforced, governed and construed in all respects in accordance with the laws of the State of Florida, as such laws are applied by Florida courts to agreements entered into, and to be performed in, Florida by and between residents of Florida, and shall be binding upon the undersigned, the undersigned's heirs, estate, legal representatives, successors and assigns and shall inure to the benefit of the Obligee, its successors and assigns.

To the extent that the provisions of the laws of the State of Nevada govern the enforcement of the Deed of Trust of even date herewith executed by Obligor, as Trustor, in favor of one or more of the Obligees, as Beneficiary, encumbering certain real property of Obligor located in Clark County, Nevada as security for all or part of the Obligations, each Guarantor, pursuant to Nevada Revised Stautes ("NRS") Section 40.495, hereby waives the provisions of NRS 40.430. Guarantors expressly acknowledge that, pursuant to NRS 40.495 and the forgoing waiver, an action for the enforcement of Guarantors' obligations under this Guaranty may be maintained separately and independently from (a) an action on the debt guaranteed hereby; (b) the exercise of any power of sale under said Deed of Trust; (c) any action to foreclose or otherwise enforce the lien of said Deed of Trust and the indebtedness or obligations secured thereby; and (d) any other proceeding against Obligor as the grantor of said Deed of Trust.

Each Guarantor has caused this instrument to be executed this 30th day of April 2008.

GUARANTORS

_____
David S. Montoya

_____
Scott Hartman


Seaview Mezzanine Fund Advisors, Inc.

_____
By: Scott W. Hartman
Its: Managing Director

# EXHIBIT A
## DEFINITION OF PLEDGED PROPERTY

For the purpose of securing prompt and complete payment and performance by the Company of all of the Obligations, the Company unconditionally and irrevocably hereby grants to the Secured Party a continuing security interest in and to, and lien upon, all of the assets of the Company, including specifically the following Pledged Property of the Company and, which upon the acquisition thereof by the Company, shall include the assets of Silver Saddle, Inc. acquired pursuant to the Asset Purchase Agreement relating thereto and the term "Company" shall be deemed to include such assets of Silver Saddle, Inc.:

(a) all goods of the Company, including, without limitation, machinery, equipment, furniture, furnishings, fixtures, signs, lights, tools, parts, supplies and motor vehicles of every kind and description, now or hereafter owned by the Company–or in which the Company may have or may hereafter acquire any ownership interest, and all replacements, additions, accessions, substitutions and proceeds thereof, arising from the sale or disposition thereof, and where applicable and to the extent assignable, the proceeds of insurance and of any tort claims involving any of the foregoing;

(b) all inventory of the Company, including, but not limited to, all goods, wares, merchandise, parts, supplies, finished products, other tangible personal property, including such inventory as is temporarily out of Company's custody or possession and including any returns upon any accounts or other proceeds, including insurance proceeds, resulting from the sale or disposition of any of the foregoing;

(c) to the extent assignable without causing any breach, default or violation thereunder or otherwise materially impairing the value thereof, all contract rights and general intangibles of the Company, including, without limitation, goodwill, trademarks, trade styles, trade names, leasehold interests, partnership or joint venture interests, patents and patent applications, copyrights, deposit accounts whether now owned or hereafter created;

(d) all documents, warehouse receipts, instruments and chattel paper of the Company whether now owned or hereafter created;

(e) all accounts and other receivables, instruments or other forms of obligations and rights to payment of the Company, (herein collectively referred to as "Accounts"), together with the proceeds thereof, all goods represented by such Accounts and all such goods that may be returned by the Company's customers, and all proceeds of any insurance thereon, and all guarantees, securities and liens which the Company –may hold for the payment of any such Accounts including, without limitation, all rights of stoppage in transit, replevin and reclamation and as an unpaid vendor and/or lienor, all of which each of the Company –represents and warrants will be bona fide and existing obligations of its respective customers, arising out of the sale of goods by the Company in the ordinary course of business;

(f) to the extent assignable, all of the Company's rights under all present and future authorizations, permits, licenses and franchises issued or granted in connection with the operations of any of its facilities;

(g) all products and proceeds (including, without limitation, insurance proceeds, to the extent assignable) from the above-described Pledged Property; and

(h) all equity interests, securities or other instruments in other companies, including, without limitation, any subsidiaries, investments or other entities (whether or not controlled).

A-1